Hon. Whitman L. Holt
Chapter 11, Subchapter V
Location: Yakima - Telephonic
Hearing Date: October 15, 2026
Hearing Time: 3:00 p.m.
Response Date: Before or At Time of Hearing

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
AT YAKIMA

| | |
|---|---|
| In re:<br><br>FOCUSED BEHAVIOR SOLUTIONS, LLC,<br><br>Debtor. | NO. 26-01995-WLH11<br><br>**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING INTERIM AND FINAL USE OF CASH COLLATERAL** |

Focused Behavior Solutions, LLC ("**Focused**" or the "**Debtor**"), by and through its undersigned counsel, hereby moves the Court to grant this *Debtor's Emergency Motion for Entry of an Interim Order Authorizing Use of Cash Collateral* (this "**Motion**") and enter an order granting emergency authorization, on an interim basis, for Debtor's use of cash collateral for the ordinary and necessary operational expenses, pending a final hearing to be held not less than fourteen (14) days after service of this Motion. This Motion is made pursuant to Section 363(c) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 4001-



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

3, and 9013-1(d)(2)(E) of the Local Rules of Bankruptcy Procedure for the Eastern District of Washington (the "**Local Rules**").

## I. EVIDENCE RELIED UPON

This Motion relies on the *Declaration of Rachel Pope* (the "**Pope Decl.**") submitted contemporaneously herewith, any exhibits attached thereto, and the pleadings and papers on file with this Court. The Debtor reserves the right to introduce additional evidence as may be required by this Court at, or prior to, the hearing on this Motion.

## II. JURISDICTION AND VENUE

This Court has jurisdiction to consider this Motion under 28 U.S.C. § § 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Debtor consents to the entry of a final order by the court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

## III. FACTUAL BACKGROUND

### A. The Debtor and its Business.

Debtor is a provider of behavioral health and Applied Behavior Analysis ("**ABA**") services headquartered in Spokane, Washington (the "**Business**"). Pope Decl. at ¶ 3. Founded in 2016, the Debtor has expanded and operate across multiple markets and developed a substantial clinical and administrative infrastructure. *Id.*

### B. Events Leading to Bankruptcy

Over the past approximately two years, the business experienced significant operational disruptions, including leadership and staffing challenges and the resulting costs associated with rebuilding operations. *Id.* at ¶ 4. These disruptions affected both revenue consistency and operating efficiency. *Id.*


CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

At the same time, reimbursement and payer-related challenges placed additional pressure on the company. *Id*. at ¶ 5. This included a significant reduction in reimbursement rates in Nebraska for certain direct ABA services. Because payroll and other operating expenses continued regardless of the timing of insurance reimbursement, these issues created substantial cash-flow pressure. *Id*.

The business also accumulated a significant accounts receivable balance. *Id*. at ¶ 6. A subsequent review of billing processes identified a substantial number of services that had not been timely submitted for reimbursement. Although many of these receivables remain collectible and represent services that were legitimately provided, the delay between providing services and receiving payment contributed to a severe mismatch between revenue earned and cash available for current obligations. *Id.*

To address cash-flow shortages and maintain payroll and operations, the Debtor relied increasingly on short-term financing, including merchant cash advances and other high-cost debt. *Id*. at ¶ 7. The frequent repayment requirements associated with this financing ultimately consumed a significant portion of operating cash and made it increasingly difficult for the company to meet current obligations while also addressing older liabilities. *Id.*

The Debtor also accumulated obligations including payroll-related taxes, business taxes, credit obligations, lease expenses, and other operating liabilities. *Id*. at ¶ 8. As these obligations combined with high-frequency debt payments and delayed reimbursement, continuing to address the Debtor's financial problems through additional borrowing was no longer a sustainable or responsible solution. *Id.*

The Debtor ultimately determined that a formal restructuring was necessary to address legacy debt, stabilize cash flow, preserve viable operations, and allow the



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

business to meet its ongoing obligations on a sustainable basis. *Id*. at ¶ 9. The business has already begun significant operational and financial restructuring. *Id.*

The Debtor has reduced its administrative overhead and eliminated high-cost management positions that were no longer sustainable. *Id*. at ¶ 10. Responsibilities have been consolidated among a smaller leadership and administrative structure, with greater emphasis on positions directly supporting clinical services, revenue generation, compliance, and billing. *Id.*

The Debtor has reduced its geographic and facility footprint. *Id*. at ¶ 11. Operations that were not producing sufficient revenue to justify their overhead have been closed or reduced, while resources are being concentrated on the locations and services that have demonstrated greater financial viability. *Id.*

The business has substantially revised its billing and revenue-cycle processes. *Id*. at ¶ 12. Billing is now reviewed and submitted more frequently, responsibility for billing readiness has been clarified, and outstanding accounts receivable and previously unsubmitted claims are being systematically identified and pursued. These changes are intended to reduce the delay between service delivery, claim submission, and payment. *Id.*

Debtor is implementing significantly tighter cash-flow monitoring. *Id*. at ¶ 13. Expenses are being reviewed based on necessity and return, recurring software and administrative costs are being reduced where possible, staffing is being aligned more closely with actual client demand and reimbursement, and future expansion will be considered only when supported by demonstrated revenue and available capital. *Id.*

The Debtor's financial distress is the result of an unsustainable repayment structure, not a failure of operations or lack of demand. *Id*. at ¶ 14. Despite its current financial difficulties, the underlying business continues to provide services for which there is ongoing demand and reimbursement. The Debtor’s financial difficulties are



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

primarily related to its existing debt structure, historical operating costs, reimbursement disruption, and cash-flow timing rather than the absence of an underlying revenue-producing business. The Debtor's services remain active, recurring, and profitable, and upon cessation of the high-frequency merchant advance withdrawals, the Debtor projects sufficient operational cash flow to maintain payroll, service long-term obligations, and fund structured plan payments under Subchapter V. *Id*.

Debtor believes that the operational changes already implemented, combined with the restructuring of existing liabilities, will allow them to continue operating on a substantially leaner and more sustainable basis. *Id*. at ¶ 15. The purpose of these filings is to restructure debt and to correct the structural issues that contributed to the Debtor's financial distress and establish controls intended to prevent those circumstances from recurring while allowing the business to continue operating, serving its customers, and fulfilling its obligations in an orderly and sustainable manner. *Id*.

**C. Procedural Background**

The Debtor filed a petition under Chapter 11, Subchapter V on October 8, 2026 (the "**Petition Date**") to prevent its assets from being liquidated, and to preserve and maintain the value of Debtor as an operating entity for the benefit of all creditors, and to continue operating the Business. Dkt. No. 1; Pope Decl. at ¶ 16. The Debtor is now operating its business and managing its affairs as a debtor-in-possession under 11 U.S.C. §§ 1107 and 1108. *Id*.

**D. The Debtor's Cash Collateral Position**

As of the Petition Date, Debtor's cash amounts were $383.07 and accounts receivable were $168,351.09[1], with no cash equivalents. *Id*. at ¶ 17. Accordingly, on

[1] Accounts receivable have been reasonably discounted in accordance with customary business practices.



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

the Petition Date, and as a going concern, Debtor's cash collateral was estimated to be valued at $168,734.16. *Id*.

**E. The Secured Lender**

**1. Headway Capital, LLC**

Headway Capital, LLC ("**Headway**") originated a loan to the Debtor in the amount of $66,100 pursuant to the terms contained in that certain *Amended Business Line of Credit Supplement* dated June 20, 2025 (the "**Headway Loan**"). *Id*. at ¶ 18. In order to provide security for the Headway Loan, Debtor granted Headway a security interest in substantially all of its assets pursuant that certain *Business Line of Credit and Security Agreement* dated June 20, 2025. *Id*. Headway perfected its security interest in Debtor's assets by filing a UCC-1 Financing Statement on June 13, 2025 (No. 2025-164-2319-3).

Debtor owes approximately $96,793.47 on the Headway Loan. *Id*. at ¶ 19. Based on an initial analysis of the Debtor's loan documents, Headway is a properly secured creditor of the Debtor.

**2. Mint Funding, Inc.**

Mint Funding, Inc. ("**Mint**") originated a loan to the Debtor in the amount of $80,000 pursuant to the terms contained in that certain Revenue Purchase Agreement dated March 6, 2026 (the "**Mint Loan**"). *Id*. at ¶ 20. In order to provide security for the Mint Loan, Debtor granted Mint a security interest in substantially all of its assets pursuant that certain *Security Agreement* dated March 6, 2026. *Id*. Mint perfected its security interest in Debtor's assets by filed a UCC-1 Financing Statement on March 6, 2026 (No. 2026-065-1619-4). *Id*.

Debtor owes approximately $25,000.00 on the Mint Loan. Based on an initial analysis of the Debtor's loan documents, Mint is a properly secured creditor of the Debtor, only junior the secured claim of Headway. *Id*. at ¶ 21.



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

### 3. Funding Metrics Services Inc.

Funding Metrics Services Inc. ("**Funding Metrics**" and collectively with Headway and Mint, the "**Secured Creditors**") made two loans to the Debtor: (a) $75,000 under a *Merchant Agreement* dated February 5, 2026 (the "**First FM Loan**"); and (b) $22,500 under a *Merchant Agreement* dated April 15, 2026 (the "**Second FM Loan**" and, together with the First FM Loan, the "**FM Loans**"). *Id.* at ¶ 22. To secure the FM Loans, the Debtor granted Funding Metrics a security interest in all of the Debtor's future receipts, including accounts receivable and other cash, under the granting language in the FM Loan documents. *Id.* Funding Metrics filed two UCC-1 Financing Statements on July 14, 2026: No. 2026-195-8566-8 for the First FM Loan and No. 2026-195-8627-6 for the Second FM Loan (together, the "**FM UCC Filings**"). *Id.*

The Debtor owes approximately $25,000.00 on the FM Loans. *Id.* at ¶ 23. Based on the Debtor's initial review of the loan documents, the FM UCC Filings were made approximately five months after the First FM Loan and three months after the Second FM Loan, and within the 90-day preference period preceding the Petition Date. The Debtor therefore believes the security interests of Funding Metrics are avoidable under 11 U.S.C. § 547(b). For purposes of this Motion only, the Debtor treats Funding Metrics as a secured creditor, junior to Headway and Mint, with an interest in the Cash Collateral, and reserves all rights to seek avoidance of that interest by adversary proceeding.

## D. Remaining Secured Creditor and Notice

The Debtor scheduled Flash Funding Servicing, Inc. ("**Flash Funding**") as a secured creditor in the amount of $27,562.56. *Id.* at ¶ 24. On further review, the Debtor discovered that Flash Funding failed to file a UCC-1 Financing Statement and therefore did not perfect its asserted security interest. *Id.* The Debtor accordingly



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

contends that any lien of Flash Funding is avoidable under 11 U.S.C. § 544(a) and treats Flash Funding's entire claim as unsecured for purposes of this Motion.

Each of the Secured Creditors and Flash Funding will receive notice of this Motion, although Headway, Mint, and Funding Metrics are the only secured creditors whose claims are fully supported by the value of the Debtor's Cash Collateral. A copy of the results of the Debtor's UCC search as of the Petition Date is attached as Exhibit A to the Pope Declaration. *Id.* at 25; Ex. A.

### F. Need for Cash Collateral and the Budget

Debtor requires the immediate use of the cash proceeds of the working capital and collection of customer sales that the Secured Creditors have a security interest in (the "**Cash Collateral**") to continue uninterrupted operations for the benefit of its creditors and its estate, in order to avoid immediate and irreparable harm to the Business. *Id.* at ¶ 26. The Debtor seeks to use Cash Collateral in accordance with the twenty (20) week budget attached as Exhibit B to the *Declaration of Rachel Pope* (the "**Budget**"), with expenses being paid from revenue of the Business and funds in Debtor's operating accounts. *Id.*; Ex. B. To the extent Debtor requires additional funds to operate the Business, Debtor will seek to obtain post-petition financing after notice and hearing. *Id*. at ¶ 27. Without use of Cash Collateral, Debtor will be unable to pay its ongoing operating expenses, including payroll and payroll taxes, and will thus be unable to continue necessary operations of the Business. *Id.*

## III. ARGUMENT

### A. Debtor's Use of the Case Collateral is Proper under § 363(c)(2).

Section 363(c) of the Bankruptcy Code provides that:

> (2) The Trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless,


CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

Implicit in the concept of "cash collateral" is that a creditor has an enforceable security interest in the subject collateral, with an enforceable security interest being one which debtor cannot avoid. 11 U.S.C. § 363(a); *In re Wright Group, Inc*., 443 B.R. 795 (Bankr. N.D. Ind. 2011).

The Debtor seeks authorization to use cash collateral under 11 U.S.C. § 363(c)(2), as such use is both necessary for the continued operation of its business and proper to preserve and maximize the value of the estate. Without access to the Cash Collateral, Debtor would be unable to pay essential operating expenses such as payroll, utilities, inventory purchases, and lease obligations, thereby jeopardizing its ability to continue as a going concern and potentially forcing liquidation. The use of the Cash Collateral is the only viable means to stabilize operations, generate revenue, and develop a confirmable plan of reorganization, all of which serve to benefit creditors with an interest in Debtor's assets.

Accordingly, Debtor respectfully requests the Court authorize the use of Cash Collateral pursuant to the terms of the proposed Interim Order filed herewith, pending a final hearing to determine whether cash collateral authorization by this Court is required.

**B. Sufficient Cause Exists to Hear this Motion on an Emergency Basis**

Pursuant to 4001-2(a)(1)(B) of the Local Rules, a cash collateral motion may be heard on an emergency basis in accordance with § 363(c)(3) of the Bankruptcy Code and Rule 4001(b) and (c) of the Bankruptcy Rules. Rule 4001(b)(2)(A) of the Bankruptcy Rules allows the court to authorize the interim use of cash collateral



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

without a full hearing if necessary to avoid immediate and irreparable harm to the estate before a final hearing can be held. Fed. R. Bankr. P. 4001(b)(2)(A).

Sufficient cause exists to hear this Motion on an emergency basis because immediate access to funds is critical to avoiding irreparable harm to the Business and preserving the value of the estate. The Debtor faces imminent obligations, including payroll, rent, utilities, and other essential operating expenses, that cannot be deferred without jeopardizing the continuation of the Business. A delay in the ability to access the Cash Collateral would likely result in the shutdown of operations, loss of customers, damage to vendor relationships, and a rapid deterioration of Debtor's going-concern value. Such harm would not only impair Debtor's ability to reorganize but also reduce the potential recovery for all creditors. Given the urgency of these circumstances and the risk of immediate and irreparable harm, expedited consideration of the motion is both warranted and necessary.

**C. The Debtor's Proposed Budget is a Proper Use of the Cash Collateral**

The Debtor proposes to use the cash collateral in accordance with the Budget and pursuant to the terms and conditions set forth below:

Budget. The Debtor seeks authorization to make the expenditures provided in the Budget, and if necessary, to exceed the amounts set forth in the Budget by as much as fifteen (15%) percent more than the total. Any expenditure more than this authorization will require written approval of each Secured Creditor, or further order of the Court after appropriate notice. Savings in any week may be carried over and used by Debtor in subsequent weeks (i.e., to account for changes in the timing of expenditures by Debtor). After the expiration of the term of the Budget, Debtor will be able to obtain use of any cash collateral of the Secured Creditors by filing and serving an amended Budget (each, an "**Amended Budget**"). If Debtor does not receive an objection to the terms of an Amended Budget within ten (10) days after


CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

the service, that certain Amended Budget will be deemed to have been approved. Substantially all the expenses listed on the Budget, or any Amended Budget, will be paid with funds held in Debtor's operating account.

Reservation of Rights. The Debtor and all other parties in interest will reserve any and all rights that they may have to object to the claims of Secured Creditors and to object to the validity, priority and extent of Secured Creditors' liens, if any, encumbering Debtor's assets.

Financial Reporting. The Debtor may provide to the Secured Creditors interim statements and operating reports required to be submitted to the Office of the United States Trustee.

Final Hearing on this Motion. The Debtor reserves the right to seek, at the final hearing on this Motion and use of Cash Collateral different from that set forth herein.

**D. The Use of Cash Collateral Will Benefit the Estate**

The Secured Creditors' liens will not be diminished if Debtor is permitted to use the Cash Collateral as is requested in this Motion. To the contrary, as is explained above, Debtor will be employing the Cash Collateral to assist in the continued operations of the business.

The use of the Cash Collateral will benefit all creditors because the Cash Collateral will be used to generate income from the sale of Debtor's services and products using the assets securing the claims of the Secured Creditors. Based on an analysis of the information provided by Debtor, the Court should approve this Motion and the Budget, and allow the use of cash collateral up to and including the date of the final hearing.

**E. The Secured Creditors Are Adequately Protected**



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

To the extent that an entity has a valid security interest in the revenues generated by property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code. Pursuant to Section 363(c)(2), a court may authorize a debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected. *In re Mellor*, 734 F.2d 96, 1400 (9th Cir. 1984); see also *In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).

Pursuant to the Supreme Court case of *United Savings Association v Timbers of Inwood Forest Associates*, 108 S.Ct. 626, 629 (1988) ("**Timbers**") and subsequent case law, the property interest that a debtor must adequately protect pursuant to Section 363(c)(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. *Id*. at 630; *see also McCombs,* at 266. Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the allowed amount of the claim or the value of the collateral." *McCombs, Id*. at 266.

The preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. *In re Triplett*, 87 B.R. 25 (Bankr. W.D. Tex. 1988). See also *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982). In *Stein*, the Court found that, as a general rule, a debtor may use cash collateral where such use would enhance or preserve the value of the collateral and allow the debtor therein to use cash collateral even though the secured party had no equity cushion for protection. The *Stein* Court determined that the use of cash collateral was necessary to the continued operations of Debtor, and that the creditor's secured position could only be enhanced by the continued operations of the debtor's business. *See also McCombs* (Court determined that the debtor's use of cash collateral for needed repairs, renovations and operating



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral).

Here, Debtor is seeking only to use Cash Collateral to pay ongoing expenses of the Business and pre-petition priority wages of its employees such that Debtor can continue to operate and generate revenue for creditors. The Debtor is proposing to pay the Headway $500 per month, Mint $500 per month, and Funding Metrics $250 per month during the cash collateral period which approximately equates to the current payment. Pope Decl. at ¶ 28. The requested relief is therefore appropriate because these efforts can only serve to benefit all creditors of the bankruptcy estate.

**F. Request for Immediate Final Hearing**

The Debtor requests the Court schedule a final hearing on this Motion as soon as possible in accordance with the requirements of the Bankruptcy Rules. Rule 4001 of the Bankruptcy Rules provides that the Court may commence a final hearing on this Motion no earlier than fourteen (14) days after service of the Motion. The Debtor needs to obtain final approval of the use of the Cash Collateral to assure Debtor's operations can continue. A final hearing on this Motion should be held as soon as possible after the expiration of the fourteen (14) day period provided for by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

**G. Notice Was Adequately Provided**

As of the filing of this Motion, no trustee, examiner or committee has been appointed in Debtor's case. Notice of this Motion will be given in accordance with Rule 4001(b)(1) of the Bankruptcy Rules and Rule 4001-3 of the Local Rules, and copies of this Motion have been served by e-mail and or overnight mail to the United States Attorney's Office (attention to the Bankruptcy Assistant), the Bankruptcy and Collections Unit for the Attorney General for the State of Washington, the Office of



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

the United States Trustee, to the Secured Creditors and their counsel of record, and by first class mail to all Debtor's twenty (20) largest general unsecured creditors.

Because of the exigencies of Debtor's case and the irreparable harm to Debtor, its Chapter 11 estate, and all parties in interest that would ensue if the relief requested herein is not granted, Debtor submits that no further notice need be given.

## IV. CONCLUSION

WHEREFORE, Debtor respectfully requests that the Court approve, on an interim basis and pending a final hearing, Debtor's use of Cash Collateral for its ordinary and necessary operational expenses as set forth in the Budget.

DATED this 13th day of October, 2026.

CAIRNCROSS & HEMPELMANN, P.S.

*/s/ Steven M. Palmer*
Steven M. Palmer, WSBA No. 48823
E-mail: spalmer@cairncross.com
Ryan R. Cole, WSBA No. 62066
E-mail: rcole@cairncross.com
524 Second Avenue, Suite 500
Seattle, WA 98104-2323
Telephone: (206) 587-0700
Facsimile: (206) 587-2308
Attorneys for Debtor